

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. E. McDonald
Commissioner of Agriculture
Austin, Texas

Attention: Honorable Charles E. Baughman, Chief Clerk

Dear Sir:

Opinion No. 0-2554
Re: Do the Texas Seed Law provisions (House Bill No. 421, Acts 1941, 47th Legislature, Regular Session) require out of state shippers who ship seed into the State of Texas f.o.b. shipper's station, to attach the official seed label to seed containers? And related questions.

You have asked the opinion of this department on the interpretation and application of the Texas Seed Law in relation to the following questions:

"First:

"Are the provisions of the Act such as to require out-of-state shippers, who ship seed into the state of Texas, f.o.b. shippers station, to attach the official seed label to seed containers?

"Second:

"Where out-of-state shipper labels his containers to conform to the provisions of Federal laws, such shipment being f.o.b. shipper's station, would such shipper be required to have attached to the containers the Texas official seed label?

Honorable J. E. McDonald, page 2

"Third:

"Where out-of-state seed dealer has a sales-
man operating in the state of Texas soliciting
purchase of planting seed, and shipments are made
by out-of-state dealer to fill orders taken by
salesman for seed, would this change the status?
or where out-of-state dealer has used the mails,
Radio, Telegraph or Telephone to solicit orders
for seed, would this effect the status."

The present Texas Seed Law is found in House Bill No.
420, Chapter 551, Acts 1941, 47th Legislature, Regular Session,
and provides in Section 4 thereof that:

"(a) It shall be unlawful for any person to
sell, offer for sale, or expose for sale any agric-
ultural or vegetable seed within this State:

". . . .

"(2) Not labeled in accordance with the pro-
visions of this Act, or having a false or mislead-
ing labeling."

Section 3 of the Act prescribes the information to be
given on such label.

We note that this law applies, by its terms, only to
those who sell, offer for sale, or expose for sale, any agricul-
tural or vegetable seed within this State. And, this being a
penal statute, it must be strictly construed within the plain
meaning of its language. See 39 Texas Jurisprudence 275, and
cases there cited. Thus, before the requirements of this law
can be enforced as to any sale of seed it must be determined that
such sale was made in Texas.

"The place where a contract of sale is made, within the
meaning of the rule that the law of the place of sale governs,
is the place where the last act necessary to complete the con-
tract of sale is performed. . . ." 55 Corpus Juris 212. Your
first two questions presuppose a sale "f.o.b. shipper's station"
in another state. 'A contract for sale 'free on board' or 'f.o.b.'
a certain place without qualification means that goods are to
be placed on board cars for shipment without act or expense of

Honorable J. E. McDonald, page 3

buyer, and that title then passes, and the property is then wholly at the buyer's risk, and such words are not open to construction." Lawson v. Hobbs, (Va.) 91 S. E. 750. Such a sale, then, would be made, not in Texas, but in the shipper's state.

We therefore answer your first two questions in the negative. But this opinion is based on the assumption that the seed have not been offered for sale within the state of Texas by the out-of-state shipper, and is so limited. Further, it is not to be construed as holding that an interstate shipper of seed may relieve himself of complying with the Texas Seed Law by labeling interstate shipments to conform with the provisions of the Federal Law. (See Savage v. Jones, 225 U.S. 501, 521-539, for a thorough discussion of the right of a state to exercise its police power in a manner that incidentally affects interstate commerce, and in a field already partly covered by Federal legislation.)

Your third question is based upon a case in which the out-of-state seed dealer solicits, in Texas, orders for seed to be shipped by him into Texas, such solicitation being made either by means of a salesman, by mail, by radio, by telegraph, or by telephone. We believe that, in either case, the seed is offered for sale within the state of Texas, within the meaning of the Texas Seed Law. When a seed dealer in another state uses the radio, for instance, as a means of carrying to prospective buyers within the State of Texas, his solicitations of orders for seed, then, within the meaning of this Act, he offers his seed for sale within this state, notwithstanding that the seed may be located in such other state. And the same reasoning applies with equal force to solicitations by salesman, mail, telephone and telegraph.

In the case of United States v. Dodge, 25 Fed. Cas. 879, it was held that, under an internal revenue act defining the business of a retail dealer in intoxicating liquor as a person who shall sell or offer for sale spirits in quantities of three gallons or less, the liquor may be offered for sale without a special or personal solicitation of any particular person to become a purchaser. "It may be done by general advertisements in the press." 29 Words and Phrases 239.

We have found no Texas case in which the question here before us has been decided. But we find ample authority for our position in the opinion of the Supreme Court of Arkansas in the case of Empire Carbon Works v. J. C. Barker & Co., 199

Honorable J. E. McDonald, page 4


S. W. 929. That case called for a decision of the question whether an out-of-state shipper of fertilizers, shipping its product into Arkansas on orders taken by a salesman in Arkansas, subject to his principal's acceptance in the other state, must comply with an Arkansas statute requiring any person who sold or offered for sale any fertilizer in the State of Arkansas to file a guaranteed analysis with the state commissioner of agriculture, and attach to it tags as provided by the statute. The law was a penal one. The opinion of the court in that case is so applicable to the facts presented in your third question, that we take the liberty of quoting from it at length:

"It is insisted that the transaction shown in the record does not constitute an 'offer for sale in the state of Arkansas' within the meaning of the statute. It is claimed that these words are designed to prevent a person or corporation from placing fertilizers in his store or warehouse in this state and throwing open the doors to the public and thus exposing the fertilizers for sale. The majority of the court, however, think this is too narrow or restricted a meaning to be given to the words 'offer for sale in the state of Arkansas.' If this had been the purpose of the Legislature, doubtless it would have used the words 'keep for sale,' instead of 'offer for sale.' The majority of the court are of the opinion that the words 'offer for sale' should be given a broader meaning. Of course, we think that, if a person or corporation should keep fertilizers in his store and expose them for sale in the state of Arkansas, this act would constitute an offer for sale. In other words, we think that the fertilizer materials could be offered for sale without any overt act of solicitation. We feel equally sure that proof tending to show any overt or individual offer of the fertilizers for sale within the state of Arkansas constituted an 'offering for sale' within the state of Arkansas within the meaning of the act. In other words, we think an actual proffer of the sale of the fertilizer by an agent of the seller to some particular person within the state of Arkansas constituted an 'offer for sale within the state,' within the meaning of the statute. In reaching this conclusion we are not unmindful of the legal maxim

Honorable J. K. McDonald, page 5

that penal statutes must be strictly construed. Another cardinal rule of construction is to find the legislative intent, and in discovering this the object of the statute should be considered.

"In the case of St. L., I. M. & S. R. Co. v. Waldrop, 93 Ark. 42, 123 S. W. 778, the court said:

"'This statute is a penal law, and the legal maxim is that such a law should be construed strictly. But this does not mean that the words of the statute should be so narrowed as to exclude cases which those words, in their common and ordinary acceptation, would comprehend.'

"In State v. Sewell, 45 Ark. 387, the court recognized that, while penal statutes are to be construed strictly, we are also committed to the principle that the intention of the Legislature must govern the construction of penal as well as other statutes, and that penal statutes are not to be construed so strictly as to defeat the intention of the Legislature. In that case the court quoted with approval from Bishop on Statutory Crimes the following:

"'The rule of strict interpretation does not prevent our calling in the aid of other rules, and giving each its appropriate scope, yet so as not to overturn this one. For example, penal statutes are not to be so construed as to work an absurdity, or defeat their purpose or the process of the court instituted for their enforcement.'

"The intention of the Legislature in passing statutes of this kind is clearly expressed by the Supreme Court of Alabama in the case of Steiner v. Ray, 84 Ala. 93, 4 South. 172, 5 Am. St. Rep. 332, as follows:

"'As we understand the statute, its controlling purpose was to guard the agricultural public against spurious and worthless compounds sometimes sold as fertilizers, to fix on sellers a

statutory guaranty that fertilizers sold by them contain the chemical ingredients, and in the proportions, represented, and to furnish to buyers cheap and reliable means of proving the deception and fraud, should such be attempted. The accomplishment of these objects will greatly promote the prosperity and success of the agricultural industry, and we do not hesitate to declare that they are strictly within the pale of legitimate police regulation.'

"It is obvious that, if the construction sought to be placed upon the statute by the plaintiff should govern, the object of the statute would in a large measure be defeated. If the agents of persons or companies domiciled without the state could come into the state and solicit orders from persons here, making the contract subject to the approval of the home office in another state, and then ship the fertilizers into the state without complying with the state laws in regard thereto, it is evident that the purpose of the statute would to a great extent be defeated. On the other hand, the construction the majority have placed upon the statute will effectuate the purpose the Legislature had in passing it, and we think we have given a reasonable meaning to the words 'offer for sale.'"

It is our opinion that where an out-of-state shipper of seed solicits orders for seed in Texas, by means of a salesman, by mail, by radio, by telegraph, or by telephone, such solicitation constitutes an offer for sale within this state, and compliance with the Texas Seed Law is required as to any shipments made into this State as a result of orders secured by such means.

APPROVED MAY 5, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

W. R. Allen
Assistant

WRA:db



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN